IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| BALTIMORE BLAST, et al., | * | |
| Plaintiffs, | * | |
| v. | * | Civil Action No. GLR-22-1878 |
| ALEJANDRO MAYORKAS, et al., | * | |
| Defendants. | * | |

\*\*\*

**<u>MEMORANDUM OPINION</u>**

THIS MATTER is before the Court on Defendant Secretary of the United States Department of Homeland Security's ("DHS") Motion to Dismiss or for Summary Judgment (ECF No. 14). The Motion is ripe for disposition, and no hearing is necessary. <u>See</u> Local Rule 105.6 (D.Md. 2023). For the reasons outlined below, the Court will grant the Motion, which it construes as one for summary judgment.

**I.    BACKGROUND**

On December 28, 2021, Defendant United States Citizenship and Immigration Services ("USCIS") denied a Form I-129 Petition for a Non-Immigrant Worker filed by Plaintiff Baltimore Blast (the "Blast") seeking a classification for a potential soccer player, Rafael Andrade Santos, to play for the Blast in the Major Arena Soccer League. (Compl. ¶ 1, ECF No. 1). The Blast has sought review of that decision before the Court under the Administrative Procedure Act, 5 U.S.C. §§ 702 <u>et seq.</u>, arguing that USCIS' decision was unlawful, arbitrary, and capricious. (<u>Id.</u>).

A.      **Administrative History**

On June 28, 2021, the Blast filed their initial petition seeking to obtain a P-1A athlete immigration status for a one-year period. (Compl. ¶ 36; Receipt Notice at 1, ECF No. 10-3). On October 15, 2021, USCIS sent the Blast a Request for Evidence indicating that information provided in the initial petition was insufficient to establish a basis for a P-1A classification and requesting additional evidence, including whether Santos was under contract and would be playing "at an internationally recognized level." (Request Evidence at 3, ECF No. 10-5). The Blast sent its response on December 16, 2021. (Resp. Request Evidence at 1, ECF No. 10-8).

On December 28, 2021, USCIS issued a Notice of Denial (the "Denial") rejecting the Blast's request to classify Santos as a P-1A athlete. (Denial Notice ["Denial"] at 1, ECF No. 10-2). The Denial states that "[t]he record does not establish the beneficiary qualifies for the P-1A classification." (Denial at 4). Specifically, the Denial indicates that letters that the Blast provided in support of the Petition did not convince USCIS that the Blast "require[d] the services on an internationally recognized athlete." (Id.). For example, USCIS cited the letter of Keith Tozer, Commissioner of MASL, wherein Tozer stated that "[s]ince the MASL plays internationally, [it] necessitates internationally recognized athletes so that fans can see the best talent from around the world and the MASL can maintain its internationally recognized level of competition in the sport." (Id.). But the Denial states that this statement was not backed up by record evidence containing documentation corroborating that claim. (Id.). The Denial also quotes a letter submitted by Filip Juda, President of the World MiniFootball Federation, which provided that "[t]he

2

WMF (World MiniFootball Federation) views the MASL (Major Arena Soccer League) as the top professional arena soccer league in the world." (Id.). Juda's letter further states:

> The MASL has over 25 of its players playing on 4 of the 24 teams in the 2017 World Cup in Tunisia, USA, Mexico, Brazil, and Argentina. The Ontario Fury of the MASL signed within weeks after the 2017 WMF World Cup Ouday Belhadj, who was the tournament's Golden Boot award winner. This was major news in Tunisia and around the World in MiniFootball. Our 2015 World Cup featured the USA vs Mexico in the championship match. The majority of the players on both teams play in the MASL. The MASL is the only league of MiniFootball in the United States that plays professional indoor soccer, which is different than the outdoor game. The MASL is an important league for the growth of MiniFootball and Arena Soccer worldwide.

(Id. at 4–5). In response to this letter, the Denial indicates that "[i]t is not evident from this statement why the MASL would require the services of an internationally recognized athlete." (Id. at 5). Further, it states that although the letter says MASL is the only MiniFootball league in the U.S. that plays indoor soccer professionally, online searches revealed that the U.S. has three active professional leagues. (Id.).

USCIS also cites documentation by the Blast that former outdoor soccer players Landon Donovan, Jermain Jones, and Dwayne de Rosario had signed contracts to play for teams in MASL, but USCIS ultimately found such support unconvincing because "the beneficiaries' participation in [other major leagues] alone [] does not establish that the MASL or its teams require the services of internationally recognized athletes." (Id.). USCIS requested additional documentation in support, and the Blast submitted "testimonial letters from various professionals related to the sport," "articles related to partnerships and sponsorships between the MASL and various organizations," and "articles

3

related to the signing of various Soccer players to MASL teams." (Id.). After reviewing policy guidance, USCIS concludes that the signing of former outdoor soccer players "does not help establish that the MASL could be considered to have a distinguished reputation that is commensurate with an internationally recognized level of performance." (Id. at 6). Indeed, USCIS noted that those players joined the MASL for one-year contracts after retiring for other leagues, which USCIS found insufficient to establish that the MASL "ha[d] garnered a distinguished reputation" that would "require[] internationally recognized players to be among its participants." (Id.). It further states that articles regarding other players who signed on with MASL indicated that "some of them entered the MASL after retiring or failing to obtain a slot on teams in top tier soccer leagues such as the MLS, or utilized/are utilizing the MASL as a development league early in their career in hopes [of] eventually entering a top tier internationally recognized league." (Id.). Also, USCIS notes that the majority of the articles submitted were from local online publications, collegiate websites, or sites maintained by MASL or MASL teams. (Id.). The Denial states that those sources are not indicative of athletes who are internationally recognized. (Id.). USCIS concludes that there is insufficient evidence regarding MASL's viewership, attendance, or media coverage. (Id.).

Ultimately, the Denial states that the Blast failed to supply "sufficient evidence to establish the beneficiary is coming to the United States to participate in an athletic competition or league that has a distinguished reputation and which requires participation of an athlete or athletic team that has an international reputation." (Id. at 7). The decision

indicates that the Blast could appeal within 33 days to the USCIS Administrative Appeals Office. (Id. at 8). The Blast did not file an appeal.

**B.      Procedural History**

On July 29, 2022, the Blast and Santos filed their Complaint for Declaratory and Injunctive Relief under the Administrative Procedure Act. (ECF No. 1). The Blast allege one count of violation of the Administrative Procedure Act, 5 U.S.C. § 701 et seq. (Count 1). The administrative record was docketed on December 13, 2022. (ECF No. 10). On December 19, 2022, DHS filed its Motion to Dismiss or for Summary Judgment (ECF No. 14). Plaintiffs filed their Opposition on January 24, 2023 (ECF No. 18), and DHS filed its Reply on February 24, 2023 (ECF No. 24).

## II.      DISCUSSION

**A.      Standard of Review**

**1.      Administrative Procedure Act**

The Administrative Procedure Act ("APA"), 5 U.S.C. § 701 et seq., in conjunction with the federal-question jurisdiction statute, provides the statutory basis for a court to review a final agency action. Claims seeking review of an agency action under the APA "are adjudicated without a trial or discovery, on the basis of an existing administrative record . . . [and accordingly] are properly decided on summary judgment." Audubon Naturalist Soc'y of the Cent. Atl. States, Inc. v. U.S. Dep't of Transp., 524 F.Supp.2d 642, 659 (D.Md. 2007). The standard set forth in Rule 56 of the Federal Rules of Civil Procedure governing summary judgment, however, "does not apply because of the limited role of a court reviewing the administrative record." Hospira, Inc. v. Burwell, No. GJH-14-2662,

2014 WL 4406901, at *9 (D.Md. Sept. 5, 2014). Rather, summary judgment is the mechanism by which the court decides as a matter of law whether "the administrative record permitted the agency to make the decision it did." Id.

The APA requires a reviewing court to:

> [H]old unlawful and set aside agency action . . . found to be . . . (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (B) contrary to constitutional right, power, privilege, or immunity; (C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; [or] (D) without observance of procedure required by law . . . .

5 U.S.C. §§ 706(2)(A)-(D).

The arbitrary and capricious standard requires a reviewing court to consider whether the agency:

> Relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.

Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto Ins. Co., 463 U.S. 29, 43 (1983). A court must uphold an action if the record shows that the agency had a rational basis for the decision; the court may not "substitute its judgment for that of the agency." State Farm, 463 U.S. at 43; Defenders of Wildlife v. N.C. Dep't of Transp., 762 F.3d 374, 396 (4th Cir. 2014). This is a "highly deferential standard which presumes the validity of the agency's action," Nat. Res. Def. Council v. EPA, 16 F.3d 1395, 1400 (4th Cir. 1993), and an agency's decision should only be overruled upon a finding that the agency has "failed to

consider relevant factors and committed a clear error of judgment." Md. Dep't of Health & Mental Hygiene v. Ctrs. for Medicare & Medicaid Servs., 542 F.3d 424, 428 (4th Cir. 2008); see also Oh. Valley Env't Coal. v. Aracoma Coal Co., 556 F.3d 177, 192 (4th Cir. 2009).

When reviewing an agency decision, the Court "must engage in a searching and careful inquiry of the [administrative] record, so that [it] may consider whether the agency considered the relevant factors and whether a clear error of judgment was made." Casa de Maryland v. U.S. Dep't of Homeland Sec., 924 F.3d 684, 703 (4th Cir. 2019) (quoting Friends of Back Bay v. U.S. Army Corps of Eng'rs, 681 F.3d 581, 587 (4th Cir. 2012)).

### 2. Regulatory Framework

The Blast filed its Petition for Santos under Form I-129, Petition for a Nonimmigrant Worker, to classify Santos as an athlete under 8 U.S.C. § 1101(a)(15)(P)(i)(a) of the Immigration and Nationality Act ("INA"). For purposes of § 1101(a)(15)(P)(i)(a), an alien may qualify as a P-1A nonimmigrant if he "is described in section 1184(c)(4)(A)." Section 1184(c)(4)(A), in turn, states that "an alien is described in this subparagraph" if he:

> (i)(I) performs as an athlete, individually or as part of a group or team, at an internationally recognized level of performance;
> [or]
> (II) is a professional athlete . . . .

8 C.F.R. § 214.2(p)(ii)(A) states:

> A P-1 classification applies to an alien who is coming temporarily to the United States:

> (1) To perform at specific athletic competition as an athlete, individually or as part of a group or team, at an internationally recognized level of performance, or
> (2) To perform with, or as an integral and essential part of the performance of, an[] entertainment group that has been recognized internationally as being outstanding in the discipline for a sustained and substantial period of time, and who has had a sustained and substantial relationship with the group (ordinarily for at least 1 year) and provides functions integral to the performance of the group.

"Internationally recognized" is defined as:

> [A] high level of achievement in a field evidenced by a degree of skill and recognition substantially above that ordinarily encountered, to the extent that such achievement is renounced, leading, or well-known in more than one country.

8 C.F.R. § 214.2(p)(3). Section 214.2(p)(2)(ii) provides:

> Petitions for P nonimmigrant aliens shall be accompanied by the following:
> (A) The evidence specified in the specific section of this part for the classification;
> (B) Copies of any written contracts between the petitioner and the alien beneficiary or, if there is no written contract, a summary of the terms of the oral agreement under which the alien(s) will be employed;
> (C) An explanation of the nature of the events or activities, the beginning and ending dates for the events or activities, and a copy of any itinerary for the events or activities; and
> (D) A written consultation from a labor organization.

8 C.F.R. § 214.2(p)(4)(ii)(A) indicates:

> A P-1 athlete must have an internationally recognized reputation as an international athlete or he or she must be a member of a foreign team that is internationally recognized. <u>The athlete or team must be coming to the United States to participate in an athletic competition which has a distinguished reputation and which requires participation of an athlete or athletic team that has an international reputation.</u>

8

(emphasis added). Section 214.2(p)(4)(ii)(B) states that:

> A petition for an athletic team must be accompanied by evidence that the team as a unit has achieved international recognition in the sport. Each member of the team is afforded P-1 classification based on the international reputation of the team. A petition for an athlete who will compete individually or as a member of a U.S. team must be accompanied by evidence that the athlete has achieved international recognition in the sport based on his or her reputation. A petition for a P-1 athlete or athletic team shall include:
> (1) A tendered contract with a major United State sports league or team, or a tendered contract in an individual sport commensurate with international recognition in that sport, if such contracts are normally executed in the sport, and
> (2) Documentation of at least two of the following:
>> (i) Evidence of having participated to a significant extent in a prior season with a major United States sports league;
>> (ii) Evidence of having participated in international competition with a national team;
>> (iii) Evidence of having participated to a significant extent in a prior season for a U.S. college or university in intercollegiate competition;
>> (iv) A written statement from an official of the governing body of the sport which details how the alien or team is internationally recognized;
>> (v) A written statement from a member of the sports media or a recognized expert in the sport which details how the alien or team is internationally recognized;
>> (vi) Evidence that the individual or team is ranked if the sport has international rankings; or
>> (vii) Evidence that the alien or team has received a significant honor or award in the sport.

Finally, USCIS released a Policy Manual (the "Manual"), which offers additional guidance regarding P-1A internationally recognized athletes. U.S. Citizenship and Immigrations Servs., Policy Manual, Chapter 4, https://www.uscis.gov/policy-manual/volume-2-part-n-chapter-4. The Manual provides certain "relevant considerations"

9

for determining whether a league qualifies as "a major U.S. sports league" performing at an "internationally recognized level of performance." Factors that may be considered in this assessment include, but are not limited to:

> [I]nformation about the structure of the league or the differentiated level of competition; documentation showing a pattern of participation by internationally recognized athletes; level of viewership, attendance, revenue, and major media coverage about the league or its teams or competitions; international rankings of athletes competing; or documented merits requirements for league participants.

Id.

**B.     Analysis**

The Blast and Santos raise a claim for violation of the Administrative Procedure Act (Count 1). (Compl. ¶¶ 91–99). At bottom, the Court finds that USCIS' Denial was not arbitrary, capricious, or unlawful and will grant DHS' Motion, which is construes as a motion for summary judgment based on the presence of the complete administrative record.

DHS argues that USCIS appropriately reviewed the evidence in the record and concluded that the Petitioner failed to demonstrate that Santos qualified for a P-1A classification to play for the Blast on MASL. (Mem. L. Supp. Mot. Dismiss Summ. J. ["Mot."] at 10, ECF No. 14-1). Specifically, DHS contends that the Denial is consistent with regulatory standards and that it provides "a detailed explanation which establishes a rational connection between the findings of fact and the decision." (Id.). The Court agrees.

Here, USCIS reviewed the following materials submitted by the Blast in support of Santos' Petition:

- An attorney letter;

- A letter of support from the petitioning company;
- Information about the petitioning company;
- A contract between the petitioner and the beneficiary;
- A letter from Keith Tozer, Commissioner of MASL;
- A letter from Filip Juda, President of the World MiniFootball Federation;
- A letter from Vlatko Andonovskyi, U.S. National Women's Soccer Team member;
- A letter from Brian Schetzer, Seattle Sounders FC;
- A letter from Mark Rogondino, Broadcaster;
- Articles;
- The beneficiary's college statistics;
- Information about Keith Tozer;
- Information about WMF;
- Testimonial letters from professionals regarding the sport of soccer;
- Articles related to partnerships and sponsorships between MASL and other organizations; and
- Articles related to signing various soccer players to MASL teams.

(Denial at 3–5, 7). In its eight-page decision, USCIS carefully laid out the statutory and regulatory standards applicable in the review of a P-1A athlete petition, identified the evidence submitted by the Blast, and explained why it found such evidence insufficient to meet the standard of showing that MASL teams are at an internationally recognized level. (See generally id.).

Specifically, USCIS found that the Blast had not demonstrated that MASL has a distinguished reputation that would require the participation of an athlete that has an international reputation. (Id. at 4). In its review of Tozer's letter, it found that his assertions that the Blast required "internationally recognized athletes so that fans can see the best talent from around the world and the MASL can maintain its internationally recognized level of competition" was unsupported and somewhat contradictory. (Id.). Indeed, it explained that MASL's need to recruit international plays to bolster its reputation and

11

increase its fan base demonstrated that the league was not already in a position of high standing internationally. (Id.).

With respect to the Blast's evidence that three former Major League Soccer and U.S. and Canadian National Team players entered one-year contracts with MASL, USCIS found that those three players alone do not establish that MASL or its teams require the services of internationally recognized athletes. (Id. at 5). Particularly of note to USCIS was that those players, Landon Donovan, Jermain Jones, and Dwayne de Rosario, joined MASL after retiring from their careers in outdoor soccer. (Id.). Such a finding appears reasonable—these three players joined MASL for a single season as they ended careers in other leagues. Indeed, USCIS explained that evidence that "three retired professional players, being signed for one season (2018-2019), by teams in a league that has existed for more than 13-years establishes that the league, itself, has [not] garnered a distinguished reputation that is commensurate with an internationally recognized level of performance or that the league requires internationally recognized players to be among its participants." (Id. at 6).

USCIS also reviewed the factors identified in their Manual, including level of media coverage. The Blast submitted several articles and stats pages for MASL players. (Id.). But USCIS did not find the articles particularly convincing. The Denial states that "similar to the three [players] discussed . . . , some of [the referenced players] entered the MASL after retiring or failing to obtain a slot on teams in top tier soccer leagues such as the MLS" or appeared to be using "MASL as a development league early in their career in hopes of eventually entering a top tier internationally recognized league." (Id.). USCIS notes that

the evidence showed that many players move back and forth between MASL and other "lower tier professional and amateur/development leagues such as the North American Soccer League (NASL) and United Soccer League Two (USL 2)." USCIS reasons that this evidence fails to show that the documented players had sufficient international recognition. (Id.).

Further, USCIS found the types of media articles submitted created an inference that MASL is not an internationally recognized league. Specifically, USCIS states that "most of the sources of discussing these players are local online publications, collegiate websites, and those of [MASL's] league/teams." (Id.). Basic articles from these sources announcing the acquisition of players did not demonstrate to USCIS that those athletes were internationally recognized or that the league itself was internationally recognized. (Id.).

Additionally, USCIS notes that the Blast provided insufficient evidence regarding MASL's viewership, attendance, and major media coverage. (Id.). Although the Blast provided screenshots of Youtube videos showing MASL games, USCIS stated that anyone can upload videos to Youtube and that alone is not indicative of MASL garnering the attention of major media outlets. (Id.). It further indicated that those videos were uploaded by small local news sources and unknown private individuals, and that the videos had insignificant views. (Id. at 7).

With respect to the letters submitted, USCIS found that nearly all of them were provided by current or former coaches, executives, players, or announcers for MASL, and therefore they carried less weight than a letter that may have been submitted with an

13

"independent objective opinion regarding the league's internationally recognized level of competition." (Id.). In any event, like the Tozer letter discussed above, USCIS did not find that the assertions made in the letters were supported by corroborative evidence in the record. (Id.).

Taken together, USCIS' decision does not appear arbitrary, capricious, or unlawful. USCIS appeared to "examine[] the relevant data" and it "articulated a satisfactory explanation for its action." Mountain Valley Pipeline, LLC v. N.C. Dep't of Env't Quality, 990 F.3d 818, 826 (4th Cir. 2021). USCIS' conclusion is rationally connected to the evidence submitted and is therefore entitled to deference from this Court. Ohio Valley Env't Coal. v. Aracoma Coal Co., 556 F.3d 177, 192 (4th Cir. 2009). Still, the Court cannot simply "rubber-stamp" agency actions, and thus it turns to the Blast's substantive arguments in opposition to DHS' Motion. See id..[1]

In its Opposition, the Blast argues that USCIS' decision was arbitrary and capricious because (1) USCIS "falsely" identified MASL as one of three professional arena soccer leagues in the United States when MASL is the only professional arena soccer league; (2) USCIS stated that MASL is a "lesser version" of Major League Soccer when they represent separate sports; and (3) USCIS incorrectly weighed the evidence regarding

---

[1] The Court notes that in its Opposition, the Blast request that summary judgment be entered in its favor. (Pls.' Mem. L. Opp'n Defs.' Mot. Dismiss & Mot. Summ. J. ["Opp'n"] at 10, ECF No. 18-1). But the Blast did not style the Opposition as a Motion for Summary Judgment, and therefore the Opposition did not invite formal briefing from DHS. Accordingly, the Court will review the substance of the Opposition as an Opposition alone and not a cross motion for summary judgment.

whether MASL is an internationally recognized league. (Opp'n at 13–22). The Court disagrees that USCIS' decision was arbitrary and capricious, as it will explain.

First, the Blast claim that USCIS incorrectly indicated in its Denial that MASL is one of three professional arena soccer leagues in the United States. (Opp'n at 13). It is true that in the Denial, USCIS outlines Filip Juda's statement that "MASL is the only league of MiniFootball in the United States that plays professional indoor soccer." (Denial at 4). In contextualizing Juda's statement, USCIS states that "a search of publicly available records" demonstrated that there are other MiniFootball leagues in the United States that play professional indoor soccer, including the Premier Arena Soccer League and the Western Indoor Soccer League. (Id. at 5). DHS appears to concede that those leagues are amateur or semi-professional, and that USCIS should not have described them as professional leagues. (Reply Supp. Mot. Dismiss Summ. J. ["Reply"] at 3, ECF No. 24). DHS argues, however, that the discussion of these other leagues was part of an overall assessment of the credibility of Juda's statements and the weight that those statements should be afforded. (Id.).

Ultimately, this inaccuracy in the Denial is not significant enough to lead the Court to conclude that USCIS' decision as a whole was arbitrary or capricious. USCIS based its decision on a wide set of facts and their application under the applicable regulatory framework, as further described above. Although USCIS included an incorrect factual statement regarding whether there are other professional indoor soccer leagues in the United States, that discussion was limited to its interpretation of the import of Juda's letter. Weighing all of the other evidence regarding the Blast's Petition, including several other

15

letters, low media coverage, insufficient information regarding viewership, low probative value of letters submitted by those still engaged in some meaningful way with MASL, retired soccer players joining MASL, and inexperienced players joining MASL, USCIS reasonably concluded that MASL does not meet the parameters for the league requiring players of international renown. USCIS' misstatement regarding other professional leagues does not appear to have been a core component of its assessment regarding the Petition, and therefore the Court does not find that USCIS' decision on the whole was arbitrary or capricious based on this single factual inaccuracy.

Next, the Blast argue that the Denial was arbitrary and capricious because USCIS "erred in comparing MASL to Major League Soccer" when they represent distinct sports with separate governing bodies. (Opp'n at 15). Specifically, the Blast dispute any inference that USCIS may have made in noting that three players joined MASL for a single season after retiring from Major League Soccer and other international teams. According to the Blast, USCIS improperly characterized this move as a transition into a lower division of the same sport when soccer and indoor soccer could more fairly be analogized as the difference between baseball and softball. (Id.). The Court is unconvinced. In the Denial, USCIS found that evidence that Donovan, Jones, and de Rosario had signed one-year contracts with MASL was not particularly probative of MASL requiring players of international prominence because those players joined MASL after retiring from other, better-known leagues. In other words, USCIS was not drawing a direct comparison between the nature of the two sports but was instead recognizing that the Blast's evidence regarding these three players in the context of their careers was insufficient to suggest that

16

MASL requires internationally recognized players. The Court notes further that the Blast's Opposition places "lesser version" in quotation marks, but USCIS does not use that language anywhere in its Denial. Without assuming any fault on the part of the Blast, the Court notes that such language is not a part of the record and cannot be attributed to USCIS. In any event, the Court does not find the Denial arbitrary or capricious on this ground.

Finally, the Blast argue that USCIS incorrectly weighed the evidence before it. As DHS notes, however, it is not this Court's role to weigh the evidence before an agency in an Administrative Procedure Act review. As the Court explained above, it must uphold an action if the record shows that the agency had a rational basis for the decision, and the court may not "substitute its judgment for that of the agency." State Farm, 463 U.S. at 43; Defenders of Wildlife, 762 F.3d at 396. For the reasons provided above, the Court finds that USCIS articulated a rational basis for its decision, and it is not for this Court to step into the role of the agency. Accordingly, the Court finds that USCIS' decision was not arbitrary or capricious and will decline to set the Denial aside.

### III.   CONCLUSION

For the foregoing reasons, the Court will grant DHS' Motion to Dismiss or for Summary Judgment, which it construes as a Motion for Summary Judgment. (ECF No. 14). A separate Order follows.

Entered this 28th day of September, 2023.

/s/
George L. Russell, III
United States District Judge